1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   TIMOTHY S. GRAYSON,

11          Petitioner,                    No. 2:09-cv-2536 KJM KJN P

12      vs.

13   D.K. SISTO, Warden,

14          Respondent.                    FINDINGS AND RECOMMENDATIONS

15   _____/

16   I.  Introduction

17          Petitioner is a state prisoner proceeding without counsel with an application for a

18   writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner claims that his federal

19   constitutional right to due process was violated by a 2008 decision of the California Board of

20   Parole Hearings (hereafter "the Board") to deny him a parole date.[1]  In addition, petitioner asserts

21   the Board erred by failing to set a minimum parole date the Board's decision violates the Ex Post

22   Facto Clause and petitioner's plea agreement, and petitioner's prison sentence violates the Eighth

23   Amendment.  After review of the record, this court finds the petition should be denied.

24   _____

25         [1]  Petitioner also claims that the decision violated his rights under the state constitution.
     That claim is not cognizable in this action as federal habeas corpus relief is available under
     28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state
26   courts.  Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985)

1

1  II.  Standards for a Writ of Habeas Corpus

2          Federal habeas corpus relief is not available for any claim decided on the merits in

3  state court proceedings unless the state court's adjudication of the claim:

4                  (1) resulted in a decision that was contrary to, or involved an
                   unreasonable application of, clearly established Federal law, as
5                  determined by the Supreme Court of the United States; or

6                  (2) resulted in a decision that was based on an unreasonable
                   determination of the facts in light of the evidence presented in the
7                  State court proceeding.

8  28 U.S.C. § 2254(d).

9          Under section 2254(d)(1), a state court decision is "contrary to" clearly

10  established United States Supreme Court precedents if it applies a rule that contradicts the

11  governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially

12  indistinguishable from a decision of the Supreme Court and nevertheless arrives at different

13  result.  Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-06

14  (2000)).

15          Under the  "unreasonable application" clause of section 2254(d)(1), a federal

16  habeas court may grant the writ if the state court identifies the correct governing legal principle

17  from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the

18  prisoner's case.  Williams, 529 U.S. at 413.  A federal habeas court "may not issue the writ

19  simply because that court concludes in its independent judgment that the relevant state-court

20  decision applied clearly established federal law erroneously or incorrectly.  Rather, that

21  application must also be unreasonable."  Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 75

22  (2003) (it is "not enough that a federal habeas court, in its independent review of the legal

23  question, is left with a 'firm conviction' that the state court was 'erroneous.'") (internal citations

24  omitted).

25          The court looks to the last reasoned state court decision as the basis for the state

26  court judgment.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state

2

1   court reaches a decision on the merits, but provides no reasoning to support its conclusion, a

2   federal habeas court independently reviews the record to determine whether habeas corpus relief

3   is available under section 2254(d).  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003);

4   Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000) ("Independent review of the record is not

5   de novo review of the constitutional issue, but rather, the only method by which we can

6   determine whether a silent state court decision is objectively unreasonable."); accord Pirtle v.

7   Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).  When it is clear that a state court has not reached

8   the merits of a petitioner's claim, or has denied the claim on procedural grounds, the AEDPA's

9   deferential standard does not apply and a federal habeas court must review the claim de novo.

10  Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle, 313 F.3d at 1167.

11  III.  Petitioner's Claims

12              A.  Due Process

13          Petitioner claims that his federal constitutional right to due process was violated

14  by a 2008 decision of the Board to deny him a parole date.

15          The Due Process Clause of the Fourteenth Amendment prohibits state action that

16  deprives a person of life, liberty, or property without due process of law.  A litigant alleging a

17  due process violation must first demonstrate that he was deprived of a liberty or property interest

18  protected by the Due Process Clause and then show that the procedures attendant upon the

19  deprivation were not constitutionally sufficient.  Kentucky Dep't of Corrections v. Thompson,

20  490 U.S. 454, 459-60 (1989).

21          A protected liberty interest may arise from either the Due Process Clause of the

22  United States Constitution "by reason of guarantees implicit in the word 'liberty,'" or from "an

23  expectation or interest created by state laws or policies."  Wilkinson v. Austin,  545 U.S. 209,

24  221 (2005) (citations omitted).  The United States Constitution does not, of its own force, create

25  a protected liberty interest in a parole date, even one that has been set.  Jago v. Van Curen,

26  454 U.S. 14, 17-21 (1981); Greenholtz v. Inmates of Neb. Penal, 442 U.S. 1, 7 (1979) (There is

1    "no constitutional or inherent right of a convicted person to be conditionally released before the

2    expiration of a valid sentence.").  However, "a state's statutory scheme, if it uses mandatory

3    language, 'creates a presumption that parole release will be granted' when or unless certain

4    designated findings are made, and thereby gives rise to a constitutional liberty interest."

5    Greenholtz, 442 U.S. at 12; see also Board of Pardons v. Allen, 482 U.S. 369, 376-78 (1987) (a

6    state's use of mandatory language ("shall") creates a presumption that parole release will be

7    granted when the designated findings are made.).

8             California's parole statutes give rise to a liberty interest in parole protected by the

9    federal due process clause.  Swarthout v. Cooke, 562 U.S. ___ (2011), No. 10-333, 2011 WL

10   197627, at *2 (Jan. 24, 2011).  In California, a prisoner is entitled to release on parole unless

11   there is "some evidence" of his or her current dangerousness.  In re Lawrence, 44 Cal.4th 1181,

12   1205-06, 1210 (2008); In re Rosenkrantz, 29 Cal.4th 616, 651-53 (2002).  However, in

13   Swarthout the United States Supreme Court held that "[n]o opinion of [theirs] supports

14   converting California's 'some evidence' rule into a substantive federal requirement."  Swarthout,

15   2011 WL 197627, at *3.  In other words, the Court specifically rejected the notion that there can

16   be a valid claim under the Fourteenth Amendment for insufficiency of evidence presented at a

17   parole proceeding.  Id. at *3.  Rather, the protection afforded by the federal due process clause to

18   California parole decisions consists solely of  the "minimal" procedural requirements set forth in

19   Greenholtz, specifically "an opportunity to be heard and . . . a statement of the reasons why

20   parole was denied."  Swarthout, at *2-3.

21             Here, the record reflects that petitioner was present at the 2008 parole hearing,

22   that he participated in the hearing, and that he was provided with the reasons for the Board's

23   decision to deny parole.  (Dkt. No. 1 at 42-122.)  According to the United States Supreme Court,

24   the federal due process clause requires no more.  Accordingly, this claim should be denied.

25   ////

26   ////

1        B.  Matrix

2            Within his first claim, petitioner argues the Board was required to apply the

3   matrix and set a minimum parole release date.  However, by its terms, the base term matrix has

4   no application unless and until a prisoner is found suitable for parole.  See 15 Cal. Code Regs.

5   § 2403(a) ("The panel shall set a base term for each life prisoner who is found suitable for

6   parole" ) (emphasis added).  Petitioner was not found suitable for parole.  Therefore, it was not

7   necessary for the Board to establish petitioner's base term matrix.  Therefore, petitioner is not

8   entitled to federal habeas relief on this argument.

9        C.  Ex Post Facto Clause

10           Petitioner claims the denial of parole has altered petitioner's life sentence into a

11  sentence of life without the possibility of parole, in violation of the Ex Post Facto Clause.

12  Petitioner avers that when he entered his plea agreement to second degree murder as a juvenile,

13  he was only eligible to receive a second degree murder charge because there were no special

14  circumstances charged in his case.  Petitioner argues he has exceeded his maximum sentence of

15  15 years, as well as the matrix maximum of 25 years.

16           The States are forbidden from passing any ex post facto law.  U.S. Const. art. I,

17  § 10.  The Supreme Court has held that the Ex Post Facto Clause is aimed at laws that

18  "retroactively alter the definition of crimes or increase the punishment for criminal acts."  Collins

19  v. Youngblood, 497 U.S. 37, 43 (1990).  The Ninth Circuit has held that a California prisoner is

20  not disadvantaged when his suitability for parole is considered under the amended guidelines

21  because "the DSL guidelines require consideration of the same criteria as did the ISL."  Connor

22  v. Estelle, 981 F.2d 1032, 1033-1034 (9th Cir. 1992).  Under state law, a life prisoner must first

23  be found suitable for parole before a parole date is set.  See In re Stanworth, 33 Cal. 3d 176, 183

24  (1982) ("reliance upon a table of time increments clashes with the statute's discerned demand for

25  reasoned individualization.").  The ISL and DSL both required that the prisoner be found suitable

26  for parole before a parole date could be set.  (Id.)

1    In 1981, petitioner was convicted of second degree murder and attempted murder.

2  (Dkt. No. 1 at 2.)  Petitioner was sentenced to a term of fifteen years to life in state prison.  (Id.)

3  Therefore, petitioner's incarceration has not exceeded his sentence.  Moreover, petitioner was not

4  found suitable for parole by the Board.  Therefore, no parole date would have been set under

5  either the ISL or the DSL.  Consequently, the Ex Post Facto Clause was not violated because the

6  law did not change to the detriment of the petitioner.  Connor, 981 F.2d at 1034.  Also,

7  petitioner's sentence has not been converted to life without the possibility of parole because

8  petitioner is still eligible for parole review.  At the 2008 parole hearing, petitioner's next parole

9  hearing was set in three years.  (Dkt. No. 1-1 at 14.)  Accordingly, petitioner's ex post facto claim

10  is without merit.

11    D.  Plea Agreement

12    Petitioner claims that the Board  has violated petitioner's plea agreement by

13  failing to fix his prison term, and by relying on all the facts and circumstances of the underlying

14  crime to find petitioner unsuitable for parole, citing Blakely v. Washington, 542 U.S. 296 (2004)

15  and Apprendi v. New Jersey, 530 U.S. 466 (2000).

16    Plea agreements are contractual in nature and are construed using the ordinary

17  rules of contract interpretation.  United States v. Transfiguracion, 442 F.3d 1222, 1228 (9th Cir.

18  2006); Brown v. Poole, 337 F.3d 1155, 1159 (9th Cir. 2003).  Courts will enforce the literal

19  terms of the plea agreement but must construe any ambiguities against the government.  United

20  States v. Franco-Lopez, 312 F.3d 984, 989 (9th Cir. 2002).  "[W]hen a plea rests in any

21  significant degree on a promise or agreement of the prosecutor, so that it can be said to be a part

22  of the inducement or consideration, such promise must be fulfilled."  Santobello v. New York,

23  404 U.S. 257, 262 (1971).  In construing a plea agreement, this court must determine what

24  petitioner reasonably believed to be its terms at the time of the plea.  United States v. Anderson,

25  970 F.2d 602, 607 (9th Cir. 1992), as amended, 990 F.2d 1163 (9th Cir. 1993).

26  ////

1    Petitioner has failed to demonstrate that the Board's denial of parole violated the

2  terms of petitioner's plea agreement.  There is nothing in the record which reflects a promise by

3  the prosecutor or the trial judge that petitioner would be released or granted parole at any

4  particular time or even before the expiration of petitioner's life term.  This court may not grant

5  habeas relief based upon petitioner's unsupported statement that he was to serve a term of ten or

6  fifteen years maximum.  In the absence of an agreement that can be specifically enforced, the

7  Board is not required to find petitioner eligible for parole upon completion of a set term of years.

8  Rather, consideration of parole suitability remains within the sound discretion of the Board.  Cal.

9  Penal Code § 3041.  Accord, Atkins v. Davison, 687 F.Supp.2d 964, 976 (C.D. Cal. 2009).

10    Petitioner's reliance on Apprendi and Blakely is similarly unavailing.  In

11  Apprendi, 530 U.S. at 490, the United States Supreme Court held that as a matter of

12  constitutional law, other than the fact of a prior conviction, "any fact that increases the penalty

13  for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved

14  beyond a reasonable doubt."  Id.  In Blakely, 542 U.S. at 303, the Supreme Court held that the

15  "statutory maximum for Apprendi purposes is the maximum sentence a judge may impose solely

16  on the basis of the facts reflected in the jury verdict or admitted by the defendant."  Blakely,

17  542 U.S. at 303.  Even if the Apprendi/Blakely rules are applicable in the parole context,

18  petitioner's claim is not colorable because the denial of parole did not increase his sentence

19  beyond the statutory maximum of life in prison.[2]

20    Petitioner included an ineffective assistance of counsel argument in connection

21  with this claim.  (Dkt. No. 1 at 20-21.)  Petitioner's plea occurred in 1981.  Because petitioner's

22

23    [2]  To the extent petitioner contends he was improperly sentenced by the Los Angeles
County Superior Court in 1982, he fails to state a cognizable federal claim.  Habeas corpus relief
is unavailable for alleged errors in the interpretation or application of state sentencing laws by
24  either a state trial court or a state appellate court.  Hendricks v. Zenon, 993 F.2d 664, 674 (9th
Cir. 1993).  Issues concerning misapplication of state sentencing statutes do not generally
25  implicate constitutional rights.  Christian v. Rhode, 41 F.3d 461, 469 (9th Cir. 1994) (absent
showing of fundamental unfairness, state court's misapplication of its own sentencing laws does
26  not justify federal habeas relief).

1   conviction became final prior to AEDPA's enactment on April 24, 1996, the one-year statute of

2   limitations began to run on April 25, 1996, and expired one year later, on April 24, 1997.

3   However, petitioner did not file the instant petition until 2009.  Furthermore, to the extent that

4   the factual predicate of petitioner's alleged involuntary plea could not have been discovered until

5   he had served ten or fifteen years of his sentence, see 28 U.S.C. § 2244(d)(1)(D), the claim would

6   still be time-barred under AEDPA.  Petitioner would have been aware, by 1997, that he was not

7   being paroled within the alleged fifteen year maximum term to which he believed he had pled

8   guilty.  Thus, petitioner would have discovered the facts giving rise to this argument well beyond

9   the applicable one-year AEDPA statute of limitations under these circumstances.  Therefore,

10  petitioner's ineffective assistance of counsel claim raised in connection with his plea bargain is

11  time-barred.

12              E.  Eighth Amendment

13              Finally, to the extent petitioner argues his continued incarceration is cruel and

14  unusual punishment because it is disproportionate to the crime committed, petitioner's claim is

15  also unavailing.

16              Successful challenges to the proportionality of particular sentences are

17  "exceedingly rare."  Solem v. Helm, 463 U.S. 277, 289-90 (1983).  "The Eighth Amendment

18  does not require strict proportionality between crime and sentence.  Rather, it forbids only

19  extreme sentences that are 'grossly disproportionate' to the crime."  Harmelin v. Michigan,

20  501 U.S. 957, 1001 (1991) (Kennedy, J., concurring) (citing Solem).  See also Lockyer v.

21  Andrade, 538 U.S. 63, 77 (2003) (two consecutive twenty-five years to life sentences with the

22  possibility of parole did not amount to cruel and unusual punishment); Ewing v. California,

23  538 U.S. 11 (2003) (holding that a sentence of twenty-five years to life imposed for felony grand

24  theft under California's Three Strikes law did not violate the Eighth Amendment); United States

25  v. Bland, 961 F.2d 123, 128 (9th Cir. 1992) (upholding a life sentence without possibility of

26  ////

1    parole for being a felon in possession of a firearm where defendant had an extensive criminal

2    record).

3            The instant case does not present an "exceedingly rare" and "extreme" case where

4    the failure of the Board to find petitioner suitable for parole, thus continuing his term of

5    imprisonment, runs afoul of Eighth Amendment law as established by the Supreme Court of the

6    United States.  Petitioner was convicted of second degree murder and attempted murder.  In view

7    of the decisions noted above, petitioner's sentence is not grossly disproportionate to this crime.

8    See Harmelin, 501 U.S. at 1004-05 (life imprisonment without possibility of parole for

9    possession of 24 ounces of cocaine raises no inference of gross disproportionality).  Accordingly,

10   petitioner is not entitled to relief on his Eighth Amendment claim.

11   IV.  Conclusion

12           For all of the above reasons, the undersigned recommends that petitioner's

13   application for a writ of habeas corpus be denied.

14           Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a

15   writ of habeas corpus be denied.

16           These findings and recommendations are submitted to the United States District

17   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

18   one days after being served with these findings and recommendations, any party may file written

19   objections with the court and serve a copy on all parties.  Such a document should be captioned

20   "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files

21   objections, he shall also address whether a certificate of appealability should issue and, if so, why

22   and as to which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if

23   the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C.

24   § 2253(c)(3).  Any response to the objections shall be filed and served within fourteen days after

25   service of the objections.  The parties are advised that failure to file objections within the

26   ////

1    specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst,

2    951 F.2d 1153 (9th Cir. 1991).

3    DATED:  February 14, 2011

4

5    _____
     KENDALL J. NEWMAN

6    UNITED STATES MAGISTRATE JUDGE

7    gray2536.157

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26